UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
DARCEL ESTEP,

                   Plaintiff,                           <u>MEMORANDUM AND ORDER</u>
                                                    CV 03-0367 (NGG)

      v.

ST. JOHN'S UNIVERSITY,

                   Defendant.
------------------------------------------------------X
GARAUFIS, United States District Judge.

     Plaintiff brings this action against St. John's University ("St. John's") under federal and state anti-discrimination law, alleging several counts of race and gender discrimination in relation to her employment as Head Coach of St. John's Woman's Basketball team.  Now before the court, Defendant moves for an order dismissing the action for lack of subject matter jurisdiction, or in the alternative, an order staying proceedings pending arbitration of Plaintiff's claims.

     For the reasons set out below, Defendant's motion to dismiss is granted.


**I.    Factual Background**

     In June 1999, St. John's hired Plaintiff, an African American woman, as Head Coach of its Women's Basketball team.  Prior to her appointment, Plaintiff engaged in contract negotiations that involved multiple phone conferences and the exchange of several drafts of her employment contract.   As initially drafted, Estep's employment contract did not contain an arbitration provision.  However, in the course of the negotiations, the parties agreed that St.

John's would draft such a provision.[1]  St. John's first suggested that the provision include a clause that provided: "[t]he arbitrator shall include in the award the prevailing party's reasonable attorney's fees." (Lalli Affirmation, Exhibit C, at 12.)  However, at the request of Estep's counsel, this clause was removed from the arbitration provision, which in its final form provided:

> The parties shall submit to arbitration before the American Arbitration Association in the City of New York, pursuant to its rules for labor disputes, all disputes or controversies between them arising from or related to any matter pertaining to this Agreement or the employment of Estep by St. John's which otherwise would require or allow resort to a court or to an administrative or other governmental dispute resolution forum, whether the claim is legal or equitable in nature, and whether it is based on tort, contract, or statutory or common law (including but not limited to disputes based on federal, state, or local civil rights laws or laws pertaining or related to discrimination in employment). Disagreements between the parties as to whether a particular dispute is arbitrable also shall be submitted for arbitration.  The administrative costs of the arbitration and the fees of the arbitrator shall be borne equally by Estep and St. John's, unless the arbitrator determines that the position of one party is taken in bad faith, in which case such administrative costs and arbitrator's fees shall be born according to the award of the arbitrator.  The decision of the arbitrator shall be final and binding on the parties.

> (Complaint, ¶ 48.)

After signing the employment contract, Estep worked for St. John's as Head Coach for approximately two and one half years. (Def. Mem., at 2.)  She reported directly to the University's Athletic Director, and was provided with a staff of three assistant coaches and one graduate student coach. (Def. Reply Mem., at 2.)  Her compensation included a salary ranging from $95,000 to $110,000, a bonus of up to $50,000 and benefits including healthcare, a car, a country club membership and a $50,0000 loan for the purchase of a residence.  (Id.)

---

[1] Estep claims, and St. John's denied, that she was required to agree to the arbitration provision as a condition of employment. (Estep Affidavit, ¶ 3.)

2

On January 25, 2002, St. John's terminated Plaintiff's employment. Thereafter, on or about July 17, 2002, Plaintiff filed charges of race and sex discrimination with the United States Equal Employment Opportunity Commission. ("EEOC"). She also filed an arbitration claim with the American Arbitration Association ("AAA"). Plaintiff claims that she filed her arbitration demand pursuant to the AAA's Labor Rules, together with the requisite $175.00 filing fee. However, the demand itself was made on a standard AAA form entitled "Employment Arbitration Rules," and was accompanied by a letter that expressly requested arbitration under those rules. (Goodman Aff., Ex. B, C.) Importantly, the filing fee under the Employment Rules is $3250.

In her demand, Estep requested as a preliminary matter that the arbitrator determine the fee splitting provision of her contract to be unenforceable or, alternatively, that St. John's be required to pay all arbitration costs in excess of the cost of a federal action. (Goodman Aff., Ex. C.) St. John's responded by noting that under applicable AAA rules, an arbitration is initiated only when the claimant files the required filing fee. (Id., Ex. D.) It noted that Estep had not filed the appropriate filling fee of $3250 and therefore petitioned the AAA to reject Plaintiff's demand for arbitration. (Id., Ex. E.)

On November 26, 2002, however, the AAA accepted the arbitration under the Labor Rules and submitted to the parties a roster of candidate arbitrators for the labor panel. Estep timely submitted her list of acceptable arbitrators, but St. John's refused to do so. (Goodman Aff. ¶ 6 and Ex. F.)

On December 2, 2002, Defendant informed the AAA that it would not deem Estep's claim as properly filed until she first paid the filling fee required under the Employment Rules.

(Id., Ex. F.)  The AAA responded on December 16, 2002, informing the parties that it would

adjudicate Plaintiff's claim under its Employment Rules.  (Id., Ex. H.)  The AAA then

commenced the process for selecting a panel of arbitrators, but St. John's again indicated its

unwillingness to proceed until Estep paid the proper filing fee for claims under the Employment

Rules.  (Id., Ex. I.)

On January 31, 2003, counsel for Estep called counsel for St. John's to request that St.

John's accept service of the complaint underlying this action.  In response, St. John's, in a last

minute attempt to stave off federal litigation, offered for the first time to advance one half of the

filing fee of $3250.  Despite this offer, Plaintiff proceeded to file this action the following day.


II.      **Discussion**

   A.      *Standard of Review*

On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, the

court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the

pleadings, such as affidavits, and if necessary, hold an evidentiary hearing.  See Cargill Intern.

S.A. v. M/T Pavel Dybenko, 991 F.2d 1012 (2d Cir. 1993).  The party asserting subject matter

jurisdiction bears the burden of establishing it.  See Makarova v. United States, 201 F.3d 110, 113

(2d Cir.2000); Malik v. Meissner, 82 F.3d 560, 562 (2d Cir.1996).


   B.      *The Federal Arbitration Act*

It is well settled that the Federal Arbitration Act ("FAA") requires federal courts to stay

litigation of disputes that are referable to arbitration under an arbitration agreement.  See 9

U.S.C. § 3.  Moreover, where all of a plaintiff's claims are referable to arbitration, the court may

dismiss an action entirely and compel arbitration.  See Sound Around, Inc. v. CE Electronic Sales

Corp., 1999 WL 167715, at *2 (E.D.N.Y. 1999); Berger v. Cantor Fitzgerald Securities, 967 F.

Supp. 91, 93 (S.D.N.Y. 1997).

     As a basis for its motion to dismiss, Defendant asserts that Plaintiff's federal claims

pertain to her employment with St. John's and are therefore encompassed by the arbitration

clause in her employment contract.  Plaintiff does not dispute that her arbitration clause envisions

arbitration of the claims she raises in this federal action, but nonetheless urges this court to

invalidate the arbitration clause on several bases.[2]

     Plaintiff first asserts that the arbitration clause of the agreement is unenforceable under

the FAA because (1) St. John's and the AAA have refused to arbitrate Plaintiff's claims under

the terms of the agreement, (2) St. John's has repudiated the agreement by refusing to participate

in the process of arbitration, and (3) St. John's violated the covenant of good faith and fair

dealing.  The court disagrees.  With respect to Plaintiff's first and second arguements, it may well

be true that the arbitration provision in Plaintiff's employment contract requires arbitration under

the Labor Rules.  However, Plaintiff herself filed her demand for arbitration under the

---

    [2] In deciding whether to stay proceedings and compel arbitration, the court must consider
the following factors: first, it must determine whether the parties agreed to arbitrate; second, it
must determine the scope of that agreement; and third, if federal statutory claims are asserted, it
must consider whether Congress intended those claims to be nonarbitrable. Beletsis v. Credit
Suisse First Boston, Corp., 2002 WL 2031610, *3 (S.D.N.Y. 2002). There is no dispute that the
parties have agreed to arbitrate and that their arbitration clause encompasses each of Plaintiff's
claims.  Moreover, it is well established that claims under the Civil Right Act of 1964 are
referable to arbitration. See Gannon v. Circuit City Stores, Inc., 262 F.3d 677, 679-80 (8th Cir.
2001).

Employment Rules,[3] and neither St. John's nor the AAA may be faulted for insisting that

Plaintiff comply with the applicable filing requirements for those rules before participating in

arbitration. With respect to the third of Plaintiff's arguments, it is clear to the court that St.

John's refusal to arbitrate, while perhaps overly technical and somewhat obstructionist, was

based upon a good faith reading of the AAA's Employment Rules. As such, the court declines

Plaintiff's invitation to invalidate *in totem* the arbitration clause in her employment contract on

the basis of Defendant's alleged bad faith refusal to submit to arbitration.

Plaintiff next asserts that this court should invalidate the parties' arbitration provision

because the costs associated with arbitration would unreasonably burden her ability to prosecute

this case. In support of this argument, Plaintiff first suggests that forcing a victim of

discrimination to share in arbitration costs which he or she would not be required to pay in court

is *per se* unconscionable. Several courts outside this circuit have adopted this *per se* rule in cases

involving low-level employees with little bargaining power who were presented with form

employment contracts on a take-it-or-leave it basis. See Cole v. Burns Intern. Sec. Services, 105

F.3d 1465 (D.C. Cir. 1997) (involving security guard who was required to agree to arbitration

clause as condition of employment); Shankle v. B-G Maintenance Management of Colorado,

Inc., 163 F.3d 1230 10th Cir. 1999) (plaintiff was janitor who was required to agree to arbitration

clause as condition of employment); but see, Stewart v. Paul, Hastings, Janofsky & Walker, LLP,

201 F.Supp.2d 291, 292-93 (S.D.N.Y.2002) (holding that "the assertion that [a] cost sharing

---

[3] Plaintiff not only filed her demand for arbitration under the title of Employment Rules, but also noted in a cover letter that her demand for arbitration was made under those rules. It may be that Plaintiff inadvertently invoked the Employment Rules rather than the Labor Rules, but having done so, she cannot now say that Defendant or the AAA was unreasonable to interpret her representations literally.

provision *per se* invalidates the entire agreement is not supported either by the law of this Circuit or by the better considered authorities elsewhere."); Beletsis, 2002 WL 2031610, *4.

The cases cited by Plaintiff that apply the *per se* rule bear little resemblance to the facts of this action, which involves an arbitration provision in an individual executive-level employment contract that was carefully negotiated by the executive's attorney. Indeed, unlike the cases cited above, the parties here engaged in substantive negotiations that resulted in the careful formation of a contract which they apparently found to be mutually beneficial. The original draft of the contract did not even contain an arbitration clause, and such a clause was added and finalized only after Plaintiff insisted on removing language concerning the award of attorney's fees. Plaintiff's ability to delete such language, combined with the fact that the parties expressly agreed to add an arbitration provision to the original draft contract, distinguishes this case from those where an employee with no bargaining power is required to sign an arbitration agreement as a condition of her employment. The *per se* rule adopted in other circuits invalidating arbitration agreements in non-executive level employment agreements, whatever its vitality in this circuit, clearly does not apply to the circumstances of this case.[4]

This is not to say, however, that the court will uphold an arbitration clause which imposes arbitration fees so excessive as to preclude a litigant from effectively vindicating his or her statutory rights. Here, Plaintiff argues that even assuming the *per se* rule against cost splitting does not apply, the court should nonetheless strike the arbitration clause from Plaintiff's employment contract because (1) she will be required pay substantial arbitration costs, (2) that

---

[4] This is true even if St. John's did insist on the inclusion of an arbitration provision during the course of negotiations. For the evidence in the record suggests that the parties' negotiations were conducted on a level playing field.

the arbitration costs will be substantially greater than the costs that Estep would be required to pay in federal court, and (3) that her financial circumstances will not permit her to fully prosecute her claims in arbitration.  The court finds none of these arguments persuasive.  With respect to the first, it is not clear how long arbitration will last, what the exact fees charged by the panel will be, and whether Plaintiff will be afforded the opportunity to re-file her demand for arbitration under the Labor Rules as envisioned by her contract.[5]  Thus, Plaintiff's argument that arbitration costs will be substantial relative to the cost of federal litigation is entirely speculative.[6]  In this respect, many courts within this circuit have found that the proper time to challenge a fee-splitting provision is once the cost of arbitration has been adduced.  See Mildworm v. Ashcroft, 200 F.Supp.2d 171 (E.D.N.Y. 2002).  Moreover, while the court is sensitive to the dangers of exorbitant arbitration fees, it is also mindful that Plaintiff is not entitled to avoid arbitration merely because it does no afford her "a virtually cost-free alternative to traditional court proceedings."  LaPrade v. Kidder, Peabody & Co., 246 F.3d 702, 707 (D.C. Cir. 2001).  Plaintiff carefully negotiated her employment contract with the aid of competent counsel, and indeed insisted that the arbitration provision in her contract should not include language awarding

---

[5] Arbitration under the Labor Rules was clearly envisioned by the parties' contract and would be so ordered had Plaintiff not complicated the situation by initiating arbitration under the Employment Rules.  The court is not presented with the AAA's regulations regarding the refiling of claims and does not wish to interfere in the AAA's administration of those regulations.  However, it does recommend that Plaintiff be afforded the opportunity to resolve this matter by refiling her claim under the Labor Rules, notwithstanding her initial filing of a demand under the Employment Rules.  The ability to do so would reduce the costs of resolving this dispute and reduce the possibility that the cost sharing provision would preclude Plaintiff from vindicating her statutory rights.

[6] In this respect, Plaintiff may well underestimate the cost of litigating this matter in federal court.

8

attorney's fees to the prevailing party. While the issue here is costs, not fees, her insistence on removing the prevailing party fee clause from the arbitration provision demonstrates that she agreed to arbitration only after a careful accounting of how arbitration would serve her interests. The implication that she unwittingly consented to arbitrate her claims or was unaware of the potential costs of arbitration strikes the court as disingenuous.

Finally, Plaintiff argues that the arbitration clause is unenforceable because it "prohibits awarding costs to Estep if she prevails." (Pl. Reply, 20.) It is well established that a prevailing party in an action brought under the Civil Rights Act of 1964 ordinarily is to be awarded attorney's fees and costs in all but special circumstances. Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 417 (1978); Newman v. Piggie Park Enters., Inc., 390 U.S. 400, 402 (1968); Quarantino v. Tiffany & Co., 166 F.3d 422, 426 (2d Cir. 1997). The rationale for that rule applies equally to discrimination claims submitted to arbitration. Moreover, public policy generally forbids arbitration provisions from preventing a prevailing plaintiff from obtaining an award of attorney's fees and costs. See DeGaetano v. Smith Barney, Inc., 983 F.Supp. 459, 464-5 (S.D.N.Y. 1997) (vacating arbitration award because arbitration agreement was against public policy to the extent that it prevented prevailing plaintiff from obtaining an award of attorney's fees in an employment discrimination case, a right plaintiff has under Title VII).

Here, the parties' arbitration agreement provides in pertinent part: "[t]he administrative costs of the arbitration and the fees of the arbitrator shall be borne equally by Estep and St. John's, unless the arbitrator determines that the position of one party is taken in bad faith, in which case such administrative costs and arbitrator's fees shall be born according to the award of the arbitrator." (Complaint, ¶ 48.) Defendant maintains that this clause does not prevent an

arbitrator from exercising his or her power under AAA rules to "grant any remedy or relief that the arbitrator deems just and equitable, including any remedy or relief that would have been available to the parties had the matter been heard in court." (Def. Reply Mem, at 9.) However, a far more sensible reading of the clause would foreclose Plaintiff's right to obtain costs as a prevailing party. With such a result, the court cannot abide. Accordingly, the court finds that the cost-splitting clause quoted above is invalid and is hereby severed from the remaining portion of the arbitration provision, which remains valid and enforceable.[7]

### III.   Conclusion

For the reasons stated above, the court hereby severs and invalidates the cost-sharing clause in Plaintiff's arbitration agreement, and finds the remainder of the arbitration provision to be valid and enforceable. The court further finds that each of Plaintiff's claims pertains to her

---

[7] While it is well established that a court has discretion to sever an unenforceable clause from an arbitration contract that contains a severability provision, Plaintiff contends that the court cannot take such action here where the parties's agreement contains no severability clause. In support of this assertion, Plaintiff cites to several cases where courts outside this circuit have refused to sever illegal clauses from arbitration agreements which do not contain severability provisions. (Pl. Mem, at 22-23.) However, very few of those cases purport to draw a bright line rule precluding severance of illegal terms in the absence of a severability clause. Rather, most of the authorities cited by Plaintiff merely stand for the proposition that the FAA does not require a court to sever such provisions. See e.g., Circuit City Stores, Inc. v. Adams, 279 F.3d 889, 895-96 (9th Cir. 2002) (refusing to sever illegal provisions that tainted entire agreement); Gannon, 262 F.3d at 683 n. 8; Ball v. SFX Broadcasting, Inc., 165 F.Supp.2d 230, 240 (N.D.N.Y. 2001). Moreover, Plaintiff fails to identify and differentiate many cases in this circuit and elsewhere which recognize the district court's discretion to sever an illegal clause so long as it does not infect or otherwise taint the remainder of an arbitration provision. See Beletsis v. Credit Suisse First Boston, Corp., 2002 WL 2031610, (S.D.N.Y. 2002); Spinetti v. Service Corp. Intern., 240 F.Supp.2d 350, 357 (W.D.Pa. 2001); DeGaetano v. Smith Barney, Inc., 983 F.Supp. 459, 470 (S.D.N.Y. 1997). In this case, I find that severance of the cost-splitting clause will not only further the aims of the FAA, but is the best method of effectuating the intent of the parties as manifested in Plaintiff's employment contract.

employment and is therefore referable to arbitration. Accordingly, the court lacks subject matter jurisdiction over Plaintiff's claims and therefore DISMISSES this action in contemplation of arbitration. The court will retain jurisdiction over any subsequent petition regarding the arbitration award.

SO ORDERED.

Dated: September 17, 2003
       Brooklyn, N.Y.

s/
_____
Nicholas G. Garaufis
United States District Judge

11